Parker, J.
The opinion which is about to be delivered by the president goes so fully into the main question argued before us, that I propose only to offer a few observations respecting it.
This case was before the court in the year 1826, upon a special verdict ascertaining the loss of the vessel and cargo during the demurrage days, and is reported in 4 Rand. 504. Judge Carr was then for affirming the judgment which had been rendered in favour of the plaintiffs in the court below; and I am much inclined to think that if I had been on this bench at that time, I must have concurred in his opinion. Judges Broohe and Green, however, held the special verdict to be imperfect in not finding, with sufficient precision, whether the delay in discharging the cargo was with the assent of the master, or otherwise, and whether it was or was not impossible to unload the vessel before she was driven from her moorings upon the coast of Spain, and there burnt by the french. For these omissions, they set aside the verdict for uncertainty, and awarded a venire de novo. • But the whole court agreed, that after the lay days had expired, freight was recoverable, unless during that period there was no possibility of unloading the cargo, or unless the master assented to the delay. The special verdict now before us expressly finds that the master did in no wise give any consent to the delay of the consignee or his agent to take the cargo from the vessel; that though there was a difficulty in procuring boats and lighters to unload her, yet there was not, during the whole time from the arrival of the vessel at the port of Cadiz, until she was lost and destroyed, any impossibility of procuring them; and that the tobacco (the freight of which is in controversy) was purposely left by Hachley, *542 the age'nt, on board the vessel, until he could make up his mind what to do with it.
We have, therefore, the authority of all the three judges who sat in the case when it was first before the , r . , , . _ court, tor saying that upon the state of facts now appearing, the appellees are entitled to recover for freight, as well as primage and demurrage. Conceding that their opinions do not bind us in the same conclusive manner that a former judgment of the court between the same parties binds, yet as the point now involved arose necessarily in the consideration of that case, the decision then made is an authority entitled to all the weight which is ever allowed to a single precedent in this court, and to much greater than the dictum of any judge, or even the judgment of any other court. Its authoritative force is strengthened by the fact that the opinions delivered in 1826 were given on great consideration, and after a minute examination of all the cases bearing upon the subject, and that now, after the most elaborate research, nothing has been found in principle, in justice, or in authority, to impeach them.
I might, under these circumstances, securely rest upon this case as an authority which, without very good reasons, I ought not to disregard. But if it is to be regarded as res integra, I am of opinion, upon principle, that the plaintiffs were entitled to recover their freight. Freight I consider to be a compensation for the carriage of the goods, for their delivery in the manner the shipowner is bound to deliver them, and for the lay days allowed to the consignee to take them from the vessel, where by the usage of trade he is bound so to take them. The manner of delivery, and the period at which the master ceases to be responsible, depend, in the absence of agreement, on the custom of the place where the voyage terminates. Wardell v. Mourillyan, 2 Esp. N. P. Cas. 603. Abbott on shipping, 222. 248. By the custom at Cadiz, masters are *543 not bound to land the cargo, but it is the duty of the 1 T 1 °C • r 1 , n consignee to send lighters tor it Irom the snore. By the charter party in this case, he was allowed twenty running days to unload the cargo, and the case of Lacombe &c. v. Waln &c. 4 Binney 299. gives him the whole time for sending for and receiving it. During that period he is in no default, and the freight is suspended, because the shipowner has contracted to hire the ship during the voyage and for the specified lay days, and to receive as a consideraron the freight agreed on. But this very reasoning proves that if the cargo is not delivered within the lay days, through the fault of the consignee, the freight is earned and must be paid; and it is plain that a majority of the court, in the case alluded to, thought that the reasonable construction of the agreement was, that the consignee might take his own time, provided he did not exceed the stipulated lay days. For the risk incurred by the shipowner during that period the freight was the premium, but for any other risk he would have been entitled to damages, ascertained in this case by express agreement. When the risk was run for which the freight was a compensation, on what principle can it be that the freight shall not be paid ? The additional sum of 50 dollars a day for demurrage was intended to cover a new risk, commencing after the first had ended. It is inserted in the charter party, it is true, but it makes no part of the contract of affreightment. By that contract, connected with the usage, the goods were to be carried to Cadiz, and the captain was to remain there with his vessel twenty days, ready to deliver them. When he has done this, he has done all that he was bound to do under the contract of affreightment. The allowance of 20 days for unloading is equivalent to an agreement on the part of the freighter to unload within the 20 days; and if, through his default, the goods are not delivered, the responsibility of the shipowner ceases, and the *544 voyage contracted for is completed. The premium given for detaining the vessel longer, for any purpose, whether to unload, or to load, or to try the market, or give time to the consignee to make up his mind what to carg°> has, in my opinion, no connexion with the freight, but is given for a wholly different consideration. If it were otherwise, the default of one contracting party might prejudice the rights of the other, and postpone his claim to freight, as well as that of the seamen to their wages, if not for an indefinite time at the caprice of the freighter, yet for a period the limits of which are no where defined, and are not easily ascertainable. *
For these among other reasons, I feel no difficulty in deciding that the happening of the loss whilst the ship was detained on demurrage, does not, under the other facts proved in this case, bar the claim of the appellees for freight; and the other objections taken to the judgment of the court below, appear to me to be equally unfounded.
By the charter party, 20 running days are allowed for unloading and discharging the vessel, after her arrival in port, and the master notifying the consignee that he is ready to unload. This implies that there shall be an agent at the port of delivery, to whom such notice may be given. There is no analogy, that I can perceive, between the obligation of a shipowner to give such notice, and that of the holder of a bill of exchange. The notification to the consignee was for the purpose of fixing the commencement of the running days, as is apparent from the words of the charter party; and it is impossible to conceive that the parties meant, that if the consignee was at London or Canton, the running days should not commence until he received notice. The reasonable construction is that he should be notified, not of the arrival of the vessel (which perhaps he was bound to take notice of) but of the readiness to *545 deliver, if he was at the port ready to receive. But . . . . , , .. , . if this is questionable, we are well warranted in saying, from the facts found, that M^ardrop was notified of the arrival and the readiness to deliver, and that his instructions to Hacldeij were predicated on that information. Besides, Hockley, both before and after he received instructions relative to the tobacco, which made him agent as to that part of the cargo as well as the flour part, was well apprized, as the jury find, of the captain’s readiness to deliver the whole, when lighters should be sent to receive it; and I think that this knowledge, and the notice he had previously received, dispensed with the vain form of giving further notice. The case of Chapman v. Keane, 3 Adolph. & Ellis 193. 30 Eng. C. L. Rep. 69. in relation to the notice requisite to charge the drawer of a bill of exchange (where, as I think, much greater particularity is necessary, for reasons peculiar to that contract, than in this) might easily be enlisted in support of this view of the case, if it were not sufficiently plain of itself.
Then, as to the pleadings. If there was no consignee of the tobacco at Cadiz, and the tobacco was suffered to remain on board the vessel until it was lost, without the default of the master, the special count in the declaration is sustained. But if that count be not sustained, and the facts found entitle the plaintiffs to recover, the general counts are sufficient. The contract was not under seal, the remuneration was to be in money, and the terms of the agreement had been performed. The rule, I think, is very accurately stated by judge Cabell in the case of Brooks v. Scott’s ex'or, 2 Munf. 345. where he says that “in respect to debts for work and labour or other personal services, the rule is, that however special the agreement was, yet if it was not under seal, and the terms of it have been performed on the plaintiff’s part, and the remuneration was to be in money, the party may declare either spe *546 dally on the original agreement, or in indebitatus assumpsit on the express promise to remunerate (it there Was 0ne) or on the promise which the law implies on the execution of the agreement.” To the same effect the doctrine is summed up in 1 Chitty’s Plead. 4th american edi. 339. in these words: “Where goods have been sold and actually delivered to defendant, though under a special agreement, it is in general sufficient to declare on the indebitatus count, provided the contract was to pay in money, and the credit expired.” And see justice Dennison’s opinion in Alcorn v. Westbrook, 1 Wils. 117. Yet in these cases you may declare on the special agreement, and by proper pleadings recover on it. The cases of Cooke v. Munstone, 1 Bos. & Pul. N. R. 351. and Ellis v. Hamlin, 3 Taunt 52. do not appear to me to militate against this doctrine.
On the whole, without noticing any other objection, lam for affirming the judgment.
Tucker, P.
The only question in this case, of any importance, is whether freight was earned by the vessel, which was lost during the demurrage without default on the part of the owner. The verdict finds that the master was at all times ready to deliver the cargo, and gave no other assent to the delay than he was bound to do by the charter party. It also finds that there was no impossibility for the consignee to procure the necessary boats and lighters for unloading; thus amply supplying the supposed deficiency of the former verdict. It is obvious that the judges who pronounced the judgment in this case as reported in 4 Rand. 504. would have had no difficulty in giving their opinions in favour of the plaintiffs on the present verdict. Yet as the judgment there is not binding, it becomes necessary that we should offer our own views of the subject.
My own opinion is, that in this case the freight was earned as soon as the lay days were passed, the master *547 having been “ at all times ready to deliver the cargo, if the consignee or his agent had sent lighters to take it off,” as they were bound to do. This could not be de- . . nied, if there was no contract for demurrage. But that contract could not fairly be construed to continue the risque of the freight. The detention was for the accommodation of the shipper,—to suit his convenience, or enable him to deliberate upon the best course to take with his adventure. It was a distinct and independent part of the contract, in no wise connected with the agreement for freight. It was a contract for a difibrent service, to be paid for by a different price and at a different rate. The freight was the consideration of the hire of the vessel for the voyage and the lay days. The detention was to be paid for at 50 dollars per day extra. But there was no detention, until the owner had fulfilled his engagement for the freight. Until then, the delay was his own delay. The demurrage did not begin until the contract for freight was complete. The vessel could not have demanded 50 dollars per day for demurrage, while she was yet earning her freight. Until the freight was fully earned, she was under hire to the shipper for the freight. She was not at the disposition of the owner, who could not hire her as a store ship at 50 dollars per day, while the shipper’s right to her under the contract for freight was yet undetermined. Now it is admitted she had title to demurrage, and this is an admission that the freight was no longer “ being earned,” but that it was already earned. If so, the subsequent loss of the vessel and cargo without the owner’s fault could not impair his right to freight.
As to the notice j the objection for want of it cannot prevail. If there was no consignee in Cadiz to receive notice, the defendants cannot complain. If Hockley was the agent, he had due notice. Indeed it seems to me clear that Wardroy must have received it as early as the 26th of January, since his answer was received *548 about the 29th. From the 26th of January till the 7th °f March there are 41 days, making 20 for the lay days, and 21 for demurrage, as allowed by the jury. So that no difficulty exists as to this part of the case,
As to the protest; if ever necessary, it can only be where (.he owner has cause of complaint, or is about to take some step which may prejudice the shipper. Neither was the case here. There was nothing to protest about, for the master was quietly waiting the consignee’s pleasure, and the vessel was lost while he was doing so.
The question as to the pleadings is settled by the case of Brooks v. Scott’s ex’or, 2 Munf. 345. which is sustained by abundant authority. See 1 Chitty’s Plead. 4th american edi. 339. 1 Selw. N. P. 58. and the cases there cited.
I am of opinion to affirm the judgment.
The other judges concurring, judgment affirmed.